13 CV 3339

PREET BHARARA
United States Attorney
Southern District of New York
By: MICHAEL J. BYARS
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2793
Facsimile: (212) 637-2717
E-mail: michael.byars@usdoj.gov



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SETH D. HARRIS, Acting Secretary of Labor, United States Department of Labor,<br><br>   Plaintiff,<br><br>v.<br><br>LOCAL 100, TRANSPORT WORKERS UNION OF AMERICA,<br><br>   Defendant. | **ECF CASE**<br><br>No. 13 Civ. _____<br><br>**COMPLAINT** |

Plaintiff Seth D. Harris, Acting Secretary of Labor, alleges as follows:

### NATURE OF THE ACTION

1. This action is brought under Title IV of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 481-84 (the "Act"), for a judgment declaring that the December 7, 2012 election of union officers conducted by Local 100, Transport Workers Union of America ("Defendant") for the offices of Executive Board Member – Car Maintenance Division and Executive Board Member – Train Operator, Division B, is void, and directing Defendant to conduct a new election for these offices under Plaintiff's supervision, and for all other appropriate relief.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 482(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1345.

3. Venue lies in this district pursuant to 29 U.S.C. § 482(b) and 28 U.S.C. § 1391(b).

## PARTIES

4. Plaintiff Seth D. Harris is the designated Acting Secretary of Labor, United States Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210. Plaintiff is authorized to bring this action under section 402(b) of Title IV of the Act, 29 U.S.C. § 482(b).

5. Defendant is, and at all times relevant to this action has been, an unincorporated association residing at 1700 Broadway, 2nd Floor, New York, New York 10019, within the jurisdiction of this district.

## FACTUAL ALLEGATIONS

6. Defendant is, and at all times relevant to this action has been, a local labor organization engaged in an industry affecting commerce within the meaning of sections 3(i), 3(j), and 401(b) of the Act (29 U.S.C. §§ 402(i), 402(j), and 481(b)).

7. On July 11, 2008, Defendant adopted bylaw Article XI, Section (d), which states: "A member who has an application pending for a supervisory non-bargaining unit position, or who is serving in such a capacity for any employer who has a collective bargaining agreement with Local 100, even on an acting basis, shall not be eligible to run for or hold office."

8. In 2008, shortly after the adoption of bylaw Article XI, Section (d), Defendant posted a flyer at various job sites entitled "UNDERSTANDING the Bylaw Amendments" (the "Flyer"). A true and correct copy of the Flyer is attached hereto as Exhibit A. The Flyer indicated that members who had applied for supervisory positions and wished to run for union office "may be

required to submit a signed statement that you are not applying, or have withdrawn any application, for a supervisory position." Ex. A at 1 ("Amendment 7: Running for office while seeking promotion.").

9. The New York City Department of Citywide Administrative Services ("DCAS") does not have a policy or mechanism that allows an employee to remove his or her name from a civil service supervisory eligibility list prior to being called for consideration for a position.

10. DCAS civil service supervisory eligibility lists are usually established for a four- to six-year period as authorized by New York City Personnel Rules and Regulations 4.6.6.

11. Defendant did not apply bylaw Article XI, Section (d) during its December 2009 union-wide officer elections.

12. Defendant, purporting to act pursuant to its Bylaws, conducted an election of officers on December 7, 2012, and this election was subject to the provisions of Title IV of the Act (29 U.S.C. §§ 481-484).

13. In August 2012, Defendant mailed to all members a combined notice of nominations and election, a true and correct copy of which is attached hereto as Exhibit 2 (the "Notice"). The Notice states, in pertinent part, that

> "a member who has an application pending for a supervisory non-[Local 100] bargaining unit position . . . shall not be eligible to run for, or hold union office." Since the DCAS and MABSTOA [(*i.e.*, the Manhattan And Bronx Surface Transit Operating Authority)] do not permit the withdrawal of an application until after the applicant is called for a position, members will not be permitted to "become eligible" by "withdrawing" his or her name from a DCAS or MABSTOA list. This rule shall not be applied to members who commenced an application for supervisor prior to the adoption of this bylaw July 11, 2008.

Ex. B at 2 ("Eligibility – Supervisory Application").

14. Defendant determined candidates' eligibility to run for office by verifying membership good standing status and placement on a DCAS civil service supervisory eligibility list.

15. On September 20, 2012, the complainant, Ainsley Stewart, submitted a Notice of Candidacy for the position of Executive Board Member - Car Maintenance Division.

16. By letter dated September 21, 2012, Election Committee Chairperson David Francis advised Stewart that he was disqualified from running for office because of his placement on an outstanding DCAS civil service supervisory eligibility list.

17. Defendant also disqualified Christopher A. Tobin from running for Executive Board Member – Train Operator, Division B because of his placement on an outstanding DCAS civil service supervisory eligibility list since about August 2008.

18. Defendant permitted LaTonya Crisp-Sauray to run for the union-wide Recording Secretary position. LaTonya Crisp-Sauray had been on a DCAS civil service supervisory eligibility list since about January 2, 2008.

19. As a result of Article XI, Section (d), approximately 3,526 members became ineligible to run for office for up to six years.

20. Stewart, a member in good standing of Defendant, protested his disqualification to run for office in the December 7, 2012 election in a September 23, 2012 letter to the Defendant's Election Committee.

21. The Defendant's Election Committee denied the protest in a September 24, 2012 e-mail to Stewart.

22. Following the procedure established by the Defendant, Stewart appealed the decision of the Election Committee to a designated Neutral Monitor, by letter dated September 25, 2012, supplemented on September 27, 2012.

23. The Neutral Monitor denied Stewart's appeal in a Decision dated October 7, 2012 and an Amended Decision dated October 9, 2012.

24. Stewart appealed the Neutral Monitor's denial to the Transport Workers Union International's Secretary-Treasurer by letter dated October 21, 2012.

25. Having invoked the remedies available for three calendar months without receiving a final decision, Stewart filed a timely complaint with the Secretary of Labor on January 23, 2013, within the one calendar month as required by section 402(a)(2) of the Act (29 U.S.C. § 482(a)(2)).

26. By letter signed March 7, 2013, the Defendant agreed that the time within which the Plaintiff may bring suit with respect to the Defendant's aforesaid election be extended to April 19, 2013.

27. By letter signed April 5, 2013, the Defendant agreed that the time within which the Plaintiff may bring suit with respect to the Defendant's aforesaid election be extended to May 3, 2013.

28. By letter signed April 18, 2013, the Defendant agreed that the time within which the Plaintiff may bring suit with respect to the Defendant's aforesaid election be extended to May 17, 2013.

29. Pursuant to section 601 of the Act (29 U.S.C. § 521), and in accordance with section 402(b) of the Act (29 U.S.C. § 482(b)), the Plaintiff investigated the complaint and, as a result of the facts shown by his investigation, found probable cause to believe that: (1) a violation of Title

IV of the Act (29 U.S.C. §§ 481-484) had occurred in the conduct of the Defendant's December 7, 2012 election; and (2) that such violation had not been remedied at the time of the institution of this action.

## CAUSE OF ACTION

30. Defendant violated section 401(e) of the Act, 29 U.S.C. § 481(e), during the conduct of the aforesaid election by unreasonably applying a candidate eligibility bylaw that denied members who had applied for supervisory positions after July 11, 2008 a reasonable opportunity to be candidates and to hold office.

31. The violation of section 401(e) of the Act (29 U.S.C. § 481(e)) may have affected he outcome of the Defendant's election for the offices of Executive Board Member – Car Maintenance Division and Executive Board Member – Train Operator, Division B.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment:

(a) declaring the Defendant's election for the offices of Executive Board Member – Car Maintenance Division and Executive Board Member – Train Operator, Division B to be void;

(b) directing the Defendant to conduct a new election for the offices of Executive Board Member – Car Maintenance Division and Executive Board Member – Train Operator, Division B under the supervision of the Plaintiff;

(c) for the costs of this action; and

(d) for such other relief as may be appropriate.

Date:  May 17, 2013
       New York, New York

                      Respectfully submitted,

                      PREET BHARARA
                      United States Attorney
                      Southern District of New York

By:  /s/ Michael J. Byars
      MICHAEL J. BYARS
      Assistant United States Attorney
      Telephone:  (212) 637-2793
      Facsimile:  (212) 637-2717
      E-mail:  michael.byars@usdoj.gov

OF COUNSEL:

M. PATRICIA SMITH
Solicitor of Labor

CHRISTOPHER B. WILKINSON
Associate Solicitor

CLINTON WOLCOTT
Counsel for Legal Advice

LINDSY LEE
Attorney

U.S. Department of Labor

- 7 -

Exhibit A



# UNDERSTANDING the Bylaw Amendments

*As the proposed amendments to the Bylaws have gone into circulation, members have requested clarification about some of them. This flyer responds to several of those questions.*

## Amendment 2 & 15: Section Meetings

In our division, joint division/section meetings work better than section meetings. Does this mean we would have to stop holding them?

No. You do need to find a way to work in quarterly section meetings as well.

## Amendment 7: Running for office while seeking promotion

I took the dispatcher's or supervisor's test. Would this mean that I can't run for office?

Along with an acceptance of nomination, you may be required to submit a signed statement that you are not applying, or have withdrawn any application, for a supervisory position. The point is not that members are wrong to seek promotion. The point is that people should not hold Union office at the same time they are trying to get promoted. There is just too much chance for conflict of interest.

## Amendment 8: Running for multiple offices

Under our current bylaws, you cannot run for a top Union office and run for division or section office at the same time, as a just-in-case move. The proposed amendment would prohibit running for division or section office for 18 months after the general election.

Note that this does not extend to vacancies due to death or serious illness.

## Amendment 9: Officer pay during strike

Union officers will receive the same pay as members on their striking property.

## Amendment 10: Collections

When a member's family is in trouble, we pass the hat. Would this mean we would have to stop?

No. This proposed amendment would mean that a Union officer or staff member would not run the collection. It does not restricting other members from doing so. Local 100 is responsible for the actions of elected representatives. This means that strict government regulations apply if an elected officer is running the collection. Officers and staff can dig into their pockets when the hat comes around, but they should not be the ones passing it.

 *The intent described here has been placed on record at the offices of the International, and of the Local 100 Recording Secretary.*

Memorandum

| | |
|---|---|
| To: | Darlyne Lawson, Recording Secretary |
| Cc: | James Little, International President |
| From: | Roger Toussaint, President- |
| Re: | Bylaw Proposed Bylaw amendment #7 submitted to membership referendum, June 2008 |
| Date: | June 9, 2008 |

This is to memorialize certain communications concerning the meaning and intent of certain amendments submitted for membership approval this month.

Proposed Amendment # 7. This amendment will preclude a member running for office when he has an application pending for promotion to a supervisory position. By "pending" what is meant is that the member is on a list to be called as opposed to merely having taken a test.

We will enforce this Bylaw very simply. At the time of nomination, the person nominated will be required to sign a declaration that he or she does not have an application pending, or that the application has been withdrawn.

Exhibit B

# 2012 ELECTION RULES



# TWU Local 100
# Notice Of Nominations
# And Elections

## For Union-Wide Offices,
## Departmental Vice Presidents,
## Executive Board,
## Division Officers,
## Convention Delegates
## And Section Officers

## I.
## NOTICE OF NOMINATIONS AND ELECTIONS FOR UNION-WIDE OFFICES, DEPARTMENTAL VICE PRESIDENTS, AND EXECUTIVE BOARD, DIVISION OFFICERS, CONVENTION DELEGATES AND SECTION OFFICERS

In accordance with the Constitution of the Transport Workers Union of America and Local 100's By–Laws, the election of Union-wide officers, Departmental Vice-Presidents, Executive Board members, (all of whom will also serve as Convention Delegates) will take place by secret mail ballot mailed out on November 16, 2012 to all those who are members in good standing as of November 1, 2012. Ballots will be counted on Friday, December 7, 2012. The following officers are to be elected:

### POSITIONS TO BE FILLED
Local Officers: President
  Financial Secretary-Treasurer
  Administrative Vice President
  Recording Secretary

Seven (7) Departmental Vice Presidents; and
Thirty-Eight (38) Executive Board Members

(All Local-wide Officers, Vice Presidents and Board Members elected will also serve as Convention Delegates)

### PERIOD OF PETITION NOMINATIONS
Monday, September 24, 2012 to Friday, October 5, 2012.

### ELIGIBILITY
To be eligible for nomination for any of the above positions, a member must be in continuous good standing in Local 100 since September 24, 2011. A member who runs for the office of President, Financial Secretary-Treasurer, Administrative Vice President, Recording Secretary or Departmental Vice-President shall not be permitted to run for a Division or Section office during this round of elections or within 18 months of the conclusion of this round of election.

### ELIGIBILITY – SUPERVISORY APPLICATION
In accordance with Article XI Section (d) of the Local 100 Bylaws, " a member who has an application pending for a supervisory non-[Local 100] bargaining unit position, or who is serving in such capacity for any employer which has a collective bargaining agreement with Local 100, even on an acting basis, shall not be eligible to run for or hold office." Since DCAS and MABSTOA do not permit the withdrawal of an application until after an applicant is called for a position, members will not be permitted to "become eligible" by "withdrawing" his or her name from a DCAS or MABSTOA list. This rule shall not be applied to members who commenced an application for supervisor prior to the adoption of this bylaw July 11, 2008.

### NOMINATIONS
All nominations shall be made by filing a "Nominating Petition Form." A candidate may run as part of a slate or as an independent candidate. Petitions for slate and independent candidates will be available to any member in good standing at the Office of the Elections Committee (*to be determined: check the Election Committee website for location: http://www.twulocal100.org/elections-committee*) between Monday, September 24, and Thursday, October 5, 2012, between the hours of 9:00 AM and 6:00 PM; the Elections Committee Office will be closed on Saturday and Sunday, September 29 and 30, 2012. Candidates must call the Elections Committee at 212-873-6000 in advance so names can be put on the security list, if necessary.

Petitions will be issued only to candidates who complete and submit an "Authorization to Pick Up a Petition" form. The forms will be available at the Elections Committee Office or the Local 100 web site and may be hand delivered, mailed, e-mailed or faxed in to the Elections Committee. Any candidate from a slate may pick up a petition or may authorize a member in good standing to pick up a Petition for the entire slate. There shall be no limitation on the number of Petitions that an authorized person may pick up. All Petitions shall be numbered by the Elections Committee and each member obtaining Petitions shall be required to sign for them and shall be held responsible for their proper use. The member who obtains the signatures on a Petition must complete and sign the statement at the bottom of each Petition, asserting that he or she collected the signatures from persons representing themselves to be members in good standing of Local 100. If such a statement is not signed, the Petition will be invalid. Each member signing must be a member in good standing for the signature to count, and only members in good standing may solicit signatures.

The Petition must be signed in ink; the member must print his/her name and must either include his/her pass number or if the employee does not have a pass number he/she must include the last four (4) numbers of his/her social security number. Any signature of a member not in good standing and/or pass number and/or social security number deemed illegible will not be counted.

### PETITION REQUIREMENTS
*Top Four Offices*
For nomination for one of the top four offices, a candidate requires the signatures of one thousand (1,000) members in good standing from any department.

*Departmental Vice President*
For nomination for Departmental Vice President a candidate requires the signatures of the number of Departmental members set forth in the table below. Only a member in good standing in the Department may validly sign a petition to nominate a candidate for Vice President from that Department.

The Vice-Presidential signature requirements are in the following table:

#### VICE-PRESIDENT TABLE

| Department | Vice-President | Required Signatures |
|---|---|---|
| Car Maintenance | 1 | 280 |
| Stations | 1 | 220 |
| Maintenance of Way Line Equipment – Signal, Track, Structure, Power | 1 | 530 |
| Rapid Transit Operations Train Operators, Conductors, Tower Operators | 1 | 320 |
| MaBSTOA Division I, Division II, Maintenance, Clerical, P&E | 1 | 430 |
| NYCTA Surface Operators, Maintenance | 1 | 390 |
| MTA Bus/ Private Operations/ School Bus-Paratransit | 1 | 450 |

### EXECUTIVE BOARD
For nomination for Executive Board Member, the signature requirements are outlined in the following table which also shows the number of Executive Board positions allocated to each Division. Only a member in good standing in the Division may validly sign a Nominating Petition to nominate a candidate for the Executive Board from that Division.

#### EXECUTIVE BOARD TABLE

| Division | Executive Board Members | Required Signatures |
|---|---|---|
| **NYCTA** | | |
| Surface Maintenance | 1 | 75 |
| Surface Operators | 4 | 300 |
| Car Maintenance | 4 | 280 |
| Train Operators | 3 | 170 |
| Conductor / Tower | 3 | 150 |
| Stations | 5 | 220 |
| Line Equipment – Signal | 3 | 225 |
| Track | 2 | 120 |
| Structure | 2 | 130 |
| Power | 1 | 60 |
| **MaBSTOA** | | |
| Division I | 2 | 140 |
| Division II | 2 | 150 |
| Maintenance, Clerical, Plant and Equipment | 1 | 75 |
| **Private Operations/School Bus-Paratransit/MTA Bus** | | |
| MTA Bus | 2 | 130 |
| Private Operations | 1 | 60 |
| School Bus-Paratransit | 2 | 150 |

### SLATE NOMINATIONS
For purposes of nominations, any group of candidates may, by submission of a "Notice of Slate Candidacy Form," provided by the Elections Committee, constitute themselves as a slate, provided that the slate includes nominees for each of the top four Local-wide officers and for Vice-President in one Department, and for at least one Executive Board position in at least one Division. A slate may not contain more than

one candidate for each of the positions to be filled. A slate which meets the above requirements need not include a candidate for every position to be filled by this election.

The completed form submitted to the Elections Committee must: (1) be signed by each candidate on the slate (no one may sign for another member), (2) show which office he/she is a candidate for, (3) include his/her name, printed exactly as it is to appear on the petition and ballot, and (4) include his/her contact information including the mailing address, social security number, telephone number, and e-mail address.

The Elections Committee will number the Executive Board positions in each Division entitled to more than one Executive Board member. Slate candidacy forms must show the particular numbered positions for which the nominees are candidates, and this number will govern the nominee's position on the ballot.

The ballot shall give the voter the opportunity to cast one vote for a slate.

### INDIVIDUAL (NON-SLATE) NOMINATIONS
Individual (non-slate) candidates must notify the Elections Committee of their intent to run for office by completing a "Nomination Form" provided by the Elections Committee. The completed form submitted to the Elections Committee must: (1) be signed by the candidate, (2) show the office for which he/she is a candidate, and (3) include his/her name, printed exactly as it is to appear on the petition and ballot, and his/her contact information including the mailing address, social security number, telephone number, and e-mail address.

### SIGNATURES REQUIRED
To nominate a slate of candidates for the top four Local Officers and one or more Departmental Vice-Presidents, a minimum of one thousand (1,000) signatures of Local 100 members in good standing from any department are required. IN ADDITION, the petition must include a sufficient number of signatures from each department from which a Departmental Vice-President on the slate is nominated, as set forth in the Vice-President table above. IN ADDITION, since a slate must include candidates for the Executive Board in a Division, the petition must include a sufficient number of signatures from that particular Division, as set forth in the Executive Board Table above.

### PREPARATION OF PETITIONS/ELIGIBILITY TO BE INCLUDED ON PETITION
The Elections Committee will prepare the "Nominating Petition Forms" and will insert, before issuance, the name or names of the candidates for whom the petitions are requested, showing the position for which each is a candidate. To expedite determinations of eligibility and to avoid delays on September 24 resulting from the time required preparing petitions, individual candidates, and those individuals or groups of candidates desiring to run as a slate are requested to file their Nomination Form and Notice of Slate Candidacy Form with the Elections Committee in advance of September 24.

Petitions for those individuals and slates filing required forms on or before Monday, September 17, 2012 will be available at 9:00 AM on September 24, 2012. Otherwise, petitions will be prepared as promptly as possible after the Elections Committee is provided with the necessary forms and information.

The Elections Committee will determine the eligibility of candidates to be included on the petition as promptly as possible and will notify each candidate found to be ineligible by telephone, e-mail, and/or overnight mail. Those found ineligible will not be included on a Petition. The inclusion by the Elections Committee of a candidate's name on a petition shall not be construed as a final ruling about whether that candidate has met the eligibility requirements for election; such an issue can be the subject of an objection through a period ending 6:00 PM on Tuesday, October 9, 2012.

### APPEALS OF ELIGIBILITY RULINGS
A candidate ruled ineligible must appeal that ruling, in writing or by e-mail, delivered to the Elections Committee within 48 hours of receipt of the notice. If the Elections Committee determines that a hearing is necessary, the Elections Committee will conduct a hearing on any appeal as expeditiously as possible, at a time designated by the Elections Committee. The Committee will give the candidate 24 hours' notice of the hearing. The burden shall be on the candidate to demonstrate to the Elections Committee that its initial determination was wrong. The Elections Committee shall rule on eligibility appeals at the close of the hearing. Elections Committee determinations may be appealed, after this hearing, to the Neutral Monitor by any candidate or good-standing member.

### FILING OF PETITIONS
Signed "Nominating Petition Forms" must be hand-delivered, by a member in good standing, to a member of the Elections Committee on weekdays from Monday, September 24, 2012 to Friday, October 5, 2012 between the hours of 9:00 AM and 6:00 PM; the Elections Committee will be closed on Saturday and Sunday, September 29 and 30, 2012. A receipt will be given to the delivering member indicating the number of pages and the number of signatures on all accepted Nomination Petitions. NO Petitions will be accepted after 6:00 PM October 5, 2012

### OBJECTIONS TO NOMINATIONS
Any member in good standing will be able to check filed Petitions to verify the number of valid signatures, under the supervision of the Elections Committee, on Monday, October 8, 2012, and Tuesday, October 9, 2012, between the hours of 9:30 AM and 6:00 PM. Written objections alleging signature duplication, or other irregularities, must be signed and submitted by a member in good standing to the Elections Committee no later than 6:00 PM, Tuesday October 9, 2012. The burden shall be on the challenging party to present evidence that would invalidate signatures or a petition as a whole. The Elections Committee will reach a decision about all objections on or before Monday, October 15, 2012. The Elections Committee will notify the objector of its decision in writing. The Elections Committee has the authority to investigate apparent irregularities on its own and make a ruling. The Elections Committee may consult with the Neutral Monitor in making its determinations.

### ELIGIBILITY REPORT
The Elections Committee will issue the Final Report on Eligibility on or before Monday October 15, 2012. Any party who wishes to contest the determination of the Elections Committee has forty-eight (48) hours from the date of this Report to appeal to Neutral Monitor, and may appeal the Neutral Monitor's ruling to the International Committee on Appeals. All decisions will be posted on the elections web site: *www.twulocal100.org/elections2012*

### BALLOTING PROCEDURE
The balloting for Union-wide Officers, Departmental Vice Presidents and Executive Board Members, shall be by secret mail ballot mailed out on November 16, 2012 and counted on Friday, December 7, 2012, in accordance with the procedure set forth in Section III below.

## II.

### NOTICE OF NOMINATIONS AND ELECTIONS FOR DIVISION OFFICES AND CONVENTION DELEGATES

In accordance with the Constitution of the Transport Workers Union of America and the Local 100 By-Laws, the election of Division Officers and Convention Delegates will take place by secret mail ballot mailed out on November 16, 2012 to all those who are members in good standing as of November 1, 2012. Ballots will be counted on Friday, December 7, 2012. The following Division Officers are to be elected:

**NYCTA**

| | |
|---|---|
| Surface Maintenance | Chair, 3 Vice Chairs, Rec. Secretary |
| Surface Operators | Chair, 3 Vice Chairs, Rec. Secretary |
| Car Maintenance | Chair, 5 Vice Chairs, Rec. Secretary |
| Train Operators | Chair, 3 Vice Chairs, Rec. Secretary |
| Conductor/ Tower | Chair, 4 Vice Chairs, Rec. Secretary* |
| Station | Chair, 4 Vice Chairs, Rec. Secretary |
| Line Equipment – Signal | Chair, 3 Vice Chairs, Rec. Secretary |
| Track | Chair, 4 Vice Chairs, Rec. Secretary** |
| Structure | Chair, 6 Vice Chairs, Rec. Secretary |
| Power | Chair, 3 Vice Chairs, Rec. Secretary |

**MABSTOA**

| | |
|---|---|
| Division I | Chair, 3 Vice Chairs, Rec. Secretary |
| Division II | Chair, 3 Vice Chairs, Rec. Secretary |
| Maintenance, Clerical, P&E | Chair, Vice Chair,*** Rec. Secretary |

**MTA Bus/School Bus-Paratransit/Private Operations**

| | |
|---|---|
| MTA Bus | Chair, 5 Vice Chairs,**** Rec. Secretary |
| Private Operations | Chair, 2 Vice Chairs, ***** Rec. Secretary |
| School Bus | Chair, 5 Vice Chairs,****** Rec. Secretary |

\*     *One of the Vice Chairs must be a member of the Tower Section; only Tower Operators will elect this Vice Chair. This Vice Chair shall also ser ve as the Tower Section Chair.*
\*\*    *A fifth Vice Chair shall be the Section Chair of the TEMs elected in the TEMs Section Election.*
\*\*\*   *This Vice Chair will be elected system-wide. One Location Vice Chair will be nominated and elected at each location.*
\*\*\*\*  *One Vice Chair will be nominated and elected at each property.*
\*\*\*\*\* *There will be two (2) Division Vice Chairs nominated from PTLA, Liberty Lines and NY Waterway. All three locations will be allowed to vote for these two positions.*
\*\*\*\*\*\* *One Vice Chair will be nominated and elected from each of the following sections: Ardsley, First Transit, Mile Square, Royal Coach, White Plains. If there are no Vice Chair nominations from any one of these sections, nominations will be accepted from any other section.*

## APPORTIONMENT OF NON EX OFFICIO DELEGATES AND ALTERNATES TO THE INTERNATIONAL CONVENTION

### NYCTA

| | |
|---|---|
| Surface Maintenance | 2 Convention Delegates, 2 Alternates |
| Surface Operators | 9 Convention Delegates, 2 Alternates |
| Car Maintenance | 9 Convention Delegates, 4 Alternates |
| Train Operators | 7 Convention Delegates, 3 Alternates |
| Conductor/Tower | 8 Convention Delegates, 3 Alternates |
| Station | 11 Convention Delegates, 5 Alternates |
| Line Equipment – Signal | 7 Convention Delegates, 3 Alternates |
| Track | 4 Convention Delegates, 2 Alternates |
| Structure | 4 Convention Delegates, 2 Alternates |
| Power | 2 Convention Delegates, 2 Alternates |

### MaBSTOA

| | |
|---|---|
| Division I | 4 Convention Delegates, 2 Alternates |
| Division II | 5 Convention Delegates, 2 Alternates |
| Maintenance, Clerical, P&E | 3 Convention Delegates, 2 Alternates |

### MTA Bus/School Bus-Paratransit/Private Operations

| | |
|---|---|
| MTA Bus | 4 Convention Delegates, 2 Alternates |
| Private Operations | 1 Convention Delegates, 2 Alternates |
| School Bus | 6 Convention Delegates, 2 Alternates |

*The number of Delegates and Alternate Delegates set forth in this chart may be reduced, based on who is elected to the Secretary-Treasurer, Administrative Vice President and Recording Secretary, and Vice Presidencies. Since those officers are automatically delegates, they will occupy an elected Convention Delegate position in the Division they come from. When that happens, the elected delegate in that division with the lowest vote totals will become the first alternate.*

*The numbers of delegates may also change after the International's accreditation in 2013. In the event there are fewer delegate spots than those indicated in the chart, the elected delegates with the lowest vote totals will become the first alternates. If the International accreditation requires additional delegates in a division, those spots will be filled in the order of their ranking.*

### NOMINATION OF DIVISION OFFICERS AND CONVENTION DELEGATES

Nomination of candidates for the above Division offices and Convention Delegate/Alternate Delegate Positions shall take place at a Division Meeting, to be held no sooner than Monday, October 1, 2012, and no later than Friday, November 2, 2012. A completely filled out "Nomination Form" (provided by the Elections Committee or available on its website) for each nominee must be submitted to the Local 100 Elections Committee by the Recording Secretary of the Division or Section no later than 6:00 PM on the third business day after nominations are held. A member need be nominated at only one nomination meeting (AM or PM). A member nominated for Division Office or Convention Delegate must be present at the nomination meeting, or the member nominating him/her must submit a written acceptance signed by the absent member by the close of the nomination meetings. The acceptance form must include the nominee's mailing address, telephone number, e-mail address and social security number.

### ELIGIBILITY – RULINGS

The Elections Committee will determine the eligibility of candidates as promptly as possible and will notify each candidate found to be ineligible by telephone, e-mail, and/or overnight mail. The ruling may be appealed to the Elections Committee, which shall hold a hearing in order to establish a factual record and further consider its decision.

### APPEALS OF ELIGIBILITY RULINGS

A candidate ruled ineligible must appeal that ruling, in writing or by e-mail, delivered to the Elections Committee within 48 hours of receipt of the notice. If the Elections Committee determines that a hearing is necessary, the Elections Committee will conduct a hearing on any appeal as expeditiously as possible, at a time designated by the Elections Committee. The committee will give the candidate 24 hours' notice of the hearing. The burden shall be on the candidate to demonstrate to the Elections Committee that its initial determination was wrong. The Elections Committee shall rule on eligibility appeals at the close of the hearing. Elections Committee determinations may be appealed to the Neutral Monitor by any candidate or good-standing member.

### ELIGIBILITY – MEMBERSHIP

To be eligible for nomination as a Division Officer or Convention Delegate/Alternate, a member must have been in continuous good standing for twelve months immediately prior to the nominations meeting.

### ELIGIBILITY (Division Office Only) – MEETING ATTENDANCE

To be nominated for Division Office, a candidate must be in good standing, and he or she must have attended at least five (5), or fifty (50) percent, whichever is smaller, of the combined regular meetings of his/her Division and Section held during the twelve (12) month period immediately preceding the month in which the nominations are held. Meeting attendance may be excused if the nominee has acted in accordance with Article XV, Sec. 7 of the TWU Constitution. The Elections Committee shall make all rulings on issues related to the application of meeting attendance requirements. All disputes submitted for Committee consideration must be in writing. Appeals from an initial Elections Committee ruling must first be made to the Elections Committee, which may hold a hearing with all concerned parties in order to ascertain the necessary information.

### ELIGIBILITY – SUPERVISORY APPLICATION

In accordance with Article XI Section (d) of the Local 100 Bylaws, " a member who has an application pending for a supervisory non-[Local 100] bargaining unit position, or who is serving in such capacity for any employer which has a collective bargaining agreement with Local 100, even on an acting basis, shall not be eligible to run for or hold office." Since DCAS and MABSTOA do not permit the withdrawal of an application until after an applicant is called for a position, members will not be permitted to "become eligible" by "withdrawing" his or her name from a DCAS or MABSTOA list. This rule shall not be applied to members who commenced an application for supervisor prior to the adoption of this bylaw on July 11, 2008.

### DIVISION NOMINATION MEETINGS SCHEDULE*

| Division | Date | Times |
|---|---|---|
| Surface Maintenance | Oct. 16 | 10 AM & 5:30 PM |
| Surface Operators | Oct. 16 | 11 AM & 6:30 PM |
| Car Maintenance | Oct. 24 | 10:15 AM & 5:15 PM |
| Train Operators | Oct. 17 | 10 AM & 6 PM |
| Conductors/Tower | Oct. 10 | 10:30 AM & 6 PM |
| Station | Oct. 25 | 10 AM & 6 PM |
| Line Equipment – Signals | Oct. 3 | 5 PM |
| Track | Oct. 24 | 8 AM & 5 PM |
| Structure | Oct. 3 | 5 PM |
| Power | Oct. 18 | 5 PM |
| OA Division I | Oct. 9 | 11 AM & 7 PM |
| OA Division II | Oct. 24 | 11 AM & 7 PM |
| Maintenance, Clerical, Plant and Equipment | Oct. 11 | 1 PM & 3:30 PM |
| MTA Bus | Oct. 16 | 11 AM & 8 PM |
| Private Operations | Oct. 11 | 11AM & 8PM |
| School Bus-Paratransit | Oct. 3 | 11 AM & 5 PM |

### ELIGIBILITY – OBJECTIONS

Rulings on eligibility for Division Office or Convention Delegate/Alternate Delegate will be made by the Elections Committee, either on its own initiative or upon the objection of a member. Any objections to eligibility must be made within two business days of the nomination. Decisions will be made by the Elections Committee as promptly as possible. Any disputes can be appealed to the Neutral Monitor within 48 hours of the Election Committee's decision.

### SLATE NOMINATIONS

For purposes of nominations, any group of candidates for Division Office and Convention Delegate may, by submission of a "Notice of Slate Candidacy Form" provided by the Elections Committee, no later than 6:00 PM on the third business day after nominations are made, constitute a slate, provided that a Division slate includes nominees for Chair, Recording Secretary, and at least one Vice Chair Position, and a Convention Delegate slate has two (2) or more Delegate nominees. A slate may not contain more than one candidate for each of the positions to be filled. The completed form submitted to the Elections Committee must: (1) be signed by each candidate on the slate (no one may sign for another member), (2) show the office for which he/she is a candidate, and (3) include his/her printed name exactly as it is to appear on the petition and ballot, and (4) include his/her contact information including the mailing address, social security number, telephone number, and e-mail address.

The Elections Committee will number the Vice Chair and Convention Delegate positions in each Division entitled to more than one Vice Chair or Convention

Delegate. Slate candidacy forms must show the particular numbered positions for which the nominees are candidates, and this number will govern the nominee's position on the ballot.

A Division Slate or a Convention Slate may run as part of a Union-wide slate. The ballot shall give the voter the opportunity to cast one vote for a slate; the Officer/Executive Board and Divisional and Convention Delegate Ballot will appear on the same side of the ballots. Slates in Division elections which are not running as part of a union-wide slate will have a slate box at the top of the division portion of the ballot. A Convention Delegate Slate not running as part of any other slate will also have a slate box at the top of that portion of the ballot.

### BALLOTING
The balloting for Division Officers (except for MaBSTOA Maintenance Garage Chairmen) and Convention Delegate, will take place, along with the election of Union-wide Officers, Departmental Vice Presidents and Executive Board Members, by secret mail ballot mailed out on November 16, 2012 and counted on Friday, December 7, 2012, in accordance with the procedure set forth in Section III below.

## III.

## ELECTION PROCEDURE – UNION-WIDE OFFICERS, DEPARTMENTAL VICE-PRESIDENTS, EXECUTIVE BOARD MEMBERS, AND DIVISION OFFICERS AND CONVENTION DELEGATES/ALTERNATES

### THE BALLOT – OFFICERS/EXECUTIVE BOARD/DIVISION OFFICERS
**Union-wide Officers, Vice-Presidents & Executive Board**
Unless otherwise requested in the Notice of Slate, each Slate will be identified on the ballot by the surname of the candidate nominated for the President on the Slate. The Slate which files the greatest number of valid signatures for union-wide offices will be placed first on the ballot and other slates will be ranked accordingly. Individual candidates will be placed on the ballot after slates, in alphabetical order by surname.

### DIVISION OFFICERS/CONVENTION DELEGATE
Unless otherwise requested in the Notice of Slate, each Divisonal slate will be identified on the ballot by the surname of the candidate nominated for Division Chair on the slate. The ballot position of slates will be determined as follows: slates running in conjunction with, and with the same name as a Union-wide slate, will be placed in the same order on the Divisional ballot as they are in the Union-wide ballot; the position of slates not affiliated with a Union-wide slate will be determined by alphabetical order of surnames of heads of slates. Individual candidates will be placed on the ballot after slates, in alphabetical order by surname. Should any group run for Convention Delegate and Alternate as a slate, without affiliation with a Union-wide slate or Divisional Slate, they will be listed after Divisional Officers on the ballot. Unaffiliated nominees for Convention Delegate or Alternate will be listed after slates.

### THE MAILING/THE BALLOT
Ballots will be mailed on Friday November 16, 2012, by the American Arbitration Association, for Union-wide Officers, Vice Presidents, Executive Board, Divisional Officers, and Convention Delegates and Alternates utilizing the most recent membership list available. To be eligible to vote in the election and be mailed a ballot, a member must be in good standing and must have paid all arrears in dues and other financial obligations to the Union, prior to voting, in accordance with Article XIII of the Constitution of the Transport Workers Union of America, AFL-CIO, on or before November 1, 2012. Any member who is not in good standing on November 1, 2012, and who pays his/her arrears after that date, may request a ballot from the AAA. Ballots received from such members by the deadline on December 7, 2012 will be counted.

Enclosed with the ballot mailed to each eligible member will be two (2) envelopes. The words "SECRET BALLOT – OFFICER DIVISIONAL AND CONVENTION DELEGATE ELECTION" will be printed on one envelope. The other envelope will be an addressed return envelope, with postage prepaid.

- Each ballot must be voted in accordance with the instructions printed on it.

- Having voted, the member must place their marked ballot in the appropriate secret ballot envelope and seal it. Any mark on the secret ballot envelope which could identify the voter will void the ballot.

- The sealed secret ballot envelope should be placed in the appropriate return addressed envelope and sealed.

- The voted ballots must be mailed so as to arrive at the designated P.O. Box before 8:30 AM on Friday December 7, 2012. No ballots may be returned to the AAA in person.

- The Officer/Executive Board, Divisional and Convention Delegate/Alternate Ballot will appear on the same side of the ballots.

### THE AMERICAN ARBITRATION ASSOCIATION
The AAA will administer the balloting. The AAA will be in possession of the membership list as it stands on November 1, 2012. Any member who does not receive a ballot should contact AAA at 1-800-529-5218. Any question by a member regarding his or her eligibility to vote should be directed to the Elections Committee. If the question is not resolved to the member's satisfaction, then the member requesting a ballot may make a written appeal to the Neutral Monitor who will then make a determination.

### THE COUNT
The count of the ballots returned will commence at 9:00 AM on December 7, 2012, at the AAA office or at another location chosen by the AAA and the Elections Committee, in consultation with the Neutral Monitor and will continue until completed, with such breaks for meals and rest as the AAA may decide.

No ballot which was received after 8:30 AM on December 7, 2012 shall be counted.

### OBSERVERS
Each candidate may designate in writing, signed by him or her, any member in good standing to act as their observer at each step in the election process, including: the assembling of ballots at the printer; the picking up of ballots from printers and their transportation to the Post Office for mailing; the eligibility check (which AAA will perform each weekday beginning November 26, 2012, at a time and place to be announced on the Election Committee web page); and the count December 7, 2012. An individual candidate may not be represented by more than one observer at any one time, except at the count. Candidates on a slate may jointly be represented by up to, but no more than, three observers at any one time except at the count, where each candidate or slate may have the same number of observers as there are stations for counting (see Supplemental Rule IV (7)(H)). A candidate may be one of the allowed observers. Each slate will be allowed to have an attorney present in the observer area.

### THE NEUTRAL MONITOR
A Neutral Monitor appointed by Local 100 will be responsible for supervising all aspects of the election, including fraud. This authority will give him/her authority to modify any procedure put into place by the Election Committee or the AAA, and to resolve disputes that arise in the course of the election. The Neutral Monitor's jurisdiction includes all disputes over conduct of the election, and disputes about or protests to the conduct of candidate(s), slate(s), the Local Union or other parties. The Elections Committee will continue to resolve disputes over eligibility, sufficiency of petitions, or failure to issue a ballot, subject to appeal to the Neutral Monitor. Any protests, objections and appeals sent to the Neutral Monitor (or the Elections Committee) must be in writing and must be made within the time periods set forth in these Rules. It will be the Neutral Monitor's responsibility to resolve these disputes in accord with the Local 100 By-Laws, the TWU Constitution, applicable law, the Election Rules adopted by the Local Executive Board, and any Supplemental Rules which may be promulgated by Neutral Monitor. The Neutral Monitor will have the power to investigate and determine the facts prior to applying the law to all disputes brought to the Neutral Monitor's attention.

### CERTIFICATION
As soon as practicable, after the count has been completed and any protest(s) is decided and remedy put into effect, the Monitor shall certify, in writing, the results of the election to the Elections Committee. The Elections Committee shall then prepare its appropriate report and certify the election to the Local Executive Board. Should a rerun be necessary, the Neutral Monitor and the Elections Committee shall certify those elections not subject to a rerun.

## IV.

## SUPPLEMENTAL RULES

*1. Membership List*
A computer disk containing the final list of the last known names and addresses of all members in good standing of the Local Union shall be delivered to the AAA no later than the close of business on November 1, 2012. This disk shall be considered the master membership list. All members who have moved or changed their address and have failed to notify the Local 100 office of such change should notify the Local 100 office of the change no later than Octo-

ber 31, 2012. It is the responsibility of the member to keep the Union updated on his/her current address. After November 1, 2012 any additions made to the master membership list because of errors previously made and any deletions due to error, promotion or retirement shall be made only by the AAA, with concurrence of the Elections Committee, and with notice to the Neutral Monitor; such changes shall be subject to inspection by all affected candidates.. The list maintained by the AAA shall be the list used for all candidate mailings done after November 1, 2012.

2. *Inspection of Membership List*
Each candidate has the right, on one occasion between October 15, 2012 and November 14, 2012, to inspect, but not copy, a list containing the last known names and addresses of all members of the Local Union. The list may be reviewed at the Local 100 office. Arrangements for review of the list will be made by the Chair of the Elections Committee. The membership list will be used for no other purpose except to generate labels for mailings. The Local Union shall not, in any way, discriminate in favor of or against any candidates with respect to the membership list. The Union shall take appropriate steps to direct that all staff and members who are in possession of part or all of the membership list, whether or not used for their work, shall be returned, together with any copies, to the Union not later than September 14, 2012.

3. *Freedom to Exercise Political Rights*
All Local Union members and all Local Union officers and employees, if members, retain the right to participate in campaign activities, including the right to openly support or oppose any candidate, to aid or campaign for any candidate, and to make personal campaign contributions.

4. *Prohibition on Interference with Voting*
No person or entity shall limit or interfere with the right of any Local 100 member to vote.

5. *Campaign Contributions*
   A. 1. No candidate for election shall accept or use any contributions or other things of value received from any employer, representative of an employer, foundation, trust, union or similar entity. Nothing herein shall be interpreted to prohibit receipt of contributions from fellow employees and members of Local 100 or the International Union, unless that employee or member is an employer and is contributing money from his/her business.

   A. 2. No employer shall be permitted to contribute anything to any campaign. The prohibition on employer contributions extends to every employer regardless of the nature of the business, or whether any union represents its employees, and includes but is not limited to political action organizations (other than a candidate's or slate's campaign organization), nonprofit organizations such as churches or civic groups, law firms, and professional organizations. These prohibitions include a ban on the contribution and use of stationery, equipment, facilities and personnel.

   A. 3. The prohibition on campaign contributions extends to all labor organizations, whether or not they are employers, except as permitted below.

   B. No Local Union services, facilities, equipment or goods—including, but not limited to, time, staff, copying machines, fax machines, telephones, printing and postage—shall be used to promote the candidacy of any individual or slate unless the Local notifies all candidates of the items available for use and all candidates are provided equal access at equal cost to such goods and services. **The use of the Local Union's official stationery, or its logo or its name is prohibited irrespective of compensation or access.**

   C. No candidate or other member may campaign for her/himself or for any other candidate during time that is paid for by the Local Union or by any employer. However, campaigning incidental to regular Local Union business or during paid vacation, paid lunch hours or breaks, or similar paid time off, is permitted. Vacation request forms must be approved in advance and request/approval forms and vacation balances must be made available to the Neutral Monitor upon request.

   D. Nothing shall prohibit any candidate from accepting contributions made by any non-member who is not an employer, or by any member who is not him/herself an employer, or by any caucus or group of Local Union members or any campaign organization of any candidate provided that such caucus, group or campaign organization is itself financed exclusively from contributions permitted under these rules.

   E. Nothing shall prohibit the donation of services by an individual to a candidate rendered on the individual's personal, free, uncompensated time.

   F. It is strongly recommended that each candidate notify all prospective contributors of the limitations on campaign contributions, that the limitation be placed on all campaign literature soliciting contributions, and at all fund-raising events, and that candidates keep a record of all donations greater than $99.

6. *Protests*
   A. All protests alleging a violation of the Local 100 By-Laws, the TWU Constitution, applicable law, the Election Rules adopted by the Local Executive Board, and Additional Rules promulgated by Neutral Monitor related to the conduct of the nominations and election, except count-day protests, must be filed within forty-eight (48) hours of the time the complainant(s) knows or should have known of the alleged violation. All complaints made after 48 hours shall be deemed waived. The deadline for all matters arising before Sept. 3 2012 shall be Sept. 5, 2012.

   B. Protests regarding any alleged improper mail ballot count-day conduct must be filed with the Neutral Monitor immediately, but no later than the completion of the counting of the ballots.

   C. All pre-election protests except those regarding disputes over an alleged improper failure to issue a ballot shall be filed by sending the Neutral Monitor a clear and concise written statement of the alleged improper conduct by overnight mail or by email or facsimile transmission and shall include the name(s), address(es), e-mail address(es) and telephone number(s) of the complainant(s) and the name(s) of the person(s) against whom the protest is filed. A copy must also be sent by email or facsimile to the Elections Committee Chair and to counsel for the Elections Committee. The Neutral Monitor shall serve the protest on the designated representative of the affected slate or independent candidate(s) unless it is clear that the protest does not impact on a slate or candidate(s).

   D. With respect to any protest, it shall be the burden of the complainant to present evidence that a violation has occurred.

   E. No protest of any candidate or member shall be considered if such candidate or member or anyone acting under his/her direction or control or on his/her behalf, caused or significantly contributed to the situation giving rise to such protest.

   F. As soon as practicable after receipt of the protest, the Neutral Monitor or his/her representative shall evaluate the protest and shall determine its merits, applying the Local 100 Bylaws, the TWU constitution, applicable law, these rules, and any published supplemental rules issued by the Neutral Monitor, and, if found meritorious, determine the appropriate remedy. The Neutral Monitor or his/her representative shall render a written decision on each protest and shall notify the complainant(s), the Local Union Elections Committee, Counsel to the Elections Committee, and any other candidate(s) affected by his/her decision.

   G. All candidates, members, the Local Union and the TWU shall cooperate with the Neutral Monitor in his/her investigations.

   H. Remedies. If as a result of any protest filed or any investigation undertaken by the Neutral Monitor with or without a protest, the Neutral Monitor determines that these Rules have been violated, the Neutral Monitor may take whatever remedial action is appropriate.

   I.1. Appeals. All appeals from decisions of the Neutral Monitor shall be made in writing to the TWU Committee on Appeals. The applicable procedure to appeal from a decision of the Neutral Monitor shall be that which is set forth in Article XXII of the TWU Constitution for appeal to the International from decisions of Local Unions, **except that appeals must be made within three (3) business days of the decision of the Neutral Monitor.**

   I.2. If no appeal is taken from the determination of the Neutral Monitor, that determination shall become final and binding.

7. *Voting and Ballot Count Procedures*
   A. All candidates and slate representatives will have an opportunity to view and comment on the draft of the ballot and instructions.

   B. AAA will send the Elections Committee a daily list of all members requesting a duplicate ballot whose names the AAA has not been able to find on its lists. The Elections Committee will investigate these names as quickly as possible and report back to AAA as to the member's eligibility to receive a ballot. If the Committee finds that the person is not eligible or does not get

back to the AAA with the person's status within 48 hours after receiving the name from AAA, then AAA will send the person a challenged ballot. AAA will fax or e-mail to the Elections Committee, Elections Committee Chair, and Neutral Monitor on a daily basis the names, divisions and pass numbers of all those receiving challenged ballots. The Elections Committee will fax or e-mail these lists to candidates; slate representatives on request to the extent practicable. All parties agree that these lists are to be used for the sole purpose of investigating the eligibility to vote of the people listed, so that if it becomes necessary to resolve challenges on the day of the count, their status can be more readily determined.

C. If any member does not receive a ballot within four (4) days of the mailing date, he or she should call the AAA at 800-529-5218. It is preferable for all members to mail their return ballots and to do so as soon as possible after receiving them in the mail. If someone is requesting a duplicate ballot on behalf of someone else, the member for whom the request is made must sign the written request for a duplicate ballot, which may then be mailed or faxed to AAA. No duplicate ballot will be mailed less than three (3) days before the count. No one may pick up or drop off a ballot in person. If a member who has timely requested a duplicate ballot by phone has not yet received it in the mail, he or she should contact the Neutral Monitor.

D. If more than one ballot is received by the AAA from any person, the later posted ballot will be the one counted. AAA will note the day of receipt of any ballot(s) received from a person sent a duplicate ballot, so that the order of posting of multiple ballots received might be determined in the absence of a postmark.

E. If a voter votes for more than the set number of candidates for a given office, his/her ballot will be void for that office only. If the voter votes for a slate, the slate vote will be treated as an individual vote for every member of the slate, so that if the voter votes for a slate and for an independent candidate or an individual candidate on another slate, the ballot will be void for that office only.

F. If a voter makes any identifying marks on the ballot or erases or defaces the ballot in a manner that makes his/her intent unclear, the ballot will be void or will be void for the office marked in an ambiguous manner. If, however, the voter makes marks or comments on the ballot that do not identify the member or obscure his/her intent, the ballot will be counted.

G. If a return envelope is completely blank or the return ID completely illegible, the ballot will be void. If there is a partial ID, the AAA will attempt to identify the voter by matching the number on the envelope with the number on the AAA mailing list and then comparing the ID on the envelope with the voter information on the list. A name, an address with street name and number, a signature and/or a pass number will constitute sufficient partial identification to allow such a matching process, so long as the ID is legible.

H. Each independent candidate or slate may have the same number of candidates/observers as there will be stations for counting the ballots for their office(s). The exact number will be determined several days before the count, based on the number of returns.

8. *Election Count Candidates & Observers Rules*
   A. Any candidate who wishes to designate a member in good standing as an observer must notify the Elections Committee in writing.
   B. Candidates and observers may not count or handle the ballots.
   C. Campaign apparel, stickers or buttons may not be worn in the room where counting takes place.
   D. Candidates/observers may not engage in campaign activities, including conversations about candidates or conversations about the election campaign in the room where counting takes place. Candidates/observers who are disruptive may be ordered to leave the counting area.
   E. Candidates/observers must enter and exit through the designated door only.
   F. Candidates/observers must sign in and sign out each time they enter or exit the room.
   G. Candidates/observers may not address the ballot counter. The member may request the counter to stop and address the issue with the Neutral Monitor.
   H. Candidates/observers are permitted to view all aspects of the election process, but must give the ballot counters room to do their job.
   I. The Neutral Monitor will look for the Head of Slate or their designated observer to discuss issues.
   J. No one will be permitted to bring knapsacks or oversized bags into the count room.

9. *Procedures for Mailing/EMailing of Campaign Literature*
   A. Each candidate shall be permitted a reasonable opportunity, equal to that of any other candidate, to have literature mailed, via the US Postal Service, to all or part of the membership, at the candidate's expense. Each candidate is entitled to a reasonable number of mailings, whether or not any other candidate makes such request(s). Requests for mailing shall be made to the Elections Committee at least five (5) days before the desired mailing date. The mail list will be transmitted by the Election Committee to the mailer designated by the Elections Committee.
   B. Each slate or individual candidate not on a slate shall also be permitted to send up to five (5) emails, no more than one in any week, to all or part of the membership for whom the Local Union maintains email addresses, at the candidate's expense. Requests for e-mailing shall be made to the Elections Committee at least five (5) days before the desired e-mailing date. The e-mailing list will be transmitted by the Election Committee to the vendor designated by the Elections Committee. These mass e-mails maybe subject to other limitations imposed by Federal Law.
   C. Each slate or individual candidate not on a slate shall also be permitted to send up to two (2) phone blasts, no more than one in any week, to all or part of the membership for whom the Local Union maintains phone numbers, at the candidate's expense. Requests for phone blasts shall be made to the Elections Committee at least five (5) days before the desired phone blast. The list of phone numbers will be transmitted by the Election Committee to the vendor designated by the Elections Committee.
   D. All written requests will be honored in the order received.
   E. Arrangements will be made by the Elections Committee with a professional mailer to handle the mailing of campaign literature, and a vendor qualified to handle the mass transmission of e-mails and phone calls.
   F. All costs for the mailing or emailing of campaign literature will be borne solely by the candidate. Costs associated with the mailings include, but are not limited to:
      1. Address labels, materials, and labor
      2. Postage
      3. Fees as determined by the outside mailer/e-mailer.

   The outside mailer chosen shall be one prepared to provide candidates with either bulk rate or first class service at the candidate's expense. Once the Elections Committee is contacted by the candidate regarding the volume of the mailing, the vendor will inform the candidate of the estimated cost of the mailing. Cost will vary according to volume. Payment by cashier's check or cash must be made upon delivery of the campaign materials to the mailer. No personal checks will be accepted by the mailer.

10. *Miscellaneous*
    A. Staff members who are members of Local 100 but who are not on leave from an employer whose employees are represented by Local 100 may only vote for the top four officers. Special ballots will be prepared for this group.
    B. Members shall vote in the Department and Division which their payroll emanates from, even if they are employed in a depot or location in a different Department or Division.
    C. Members employed by a Private Operations, or School Bus-Paratransit employer, and by the NYC Transit and MaBSTOA may vote only for a NYC Transit or MABSTOA Vice President, Executive Board members, and Division Officers. Such members, however, will be allowed to vote for Section Officers in both of their sections. Special ballots will be prepared for this group (if any).

V.

## NOTICE OF SECTION OFFICER NOMINATIONS AND ELECTIONS

In accordance with the Constitution of the Transport Workers Union of America and the Bylaws of Local 100, the nomination and election of Section Officers will take place between October 2012 and February 2013. The following Section Officers are to be elected:

- Section Chair
- Section Vice Chair (one or more, per Section Bylaws)
- Section Recording Secretary, and in MaBSTOA, Chief Line Steward

These elections shall be administered and supervised by the Elections Committee and not the Neutral Monitor.

## NOMINATIONS

1. Nomination of candidates for the above-mentioned Section offices shall take place at a Section meeting held no sooner than October 1, 2012 and no later than January 31, 2013. A schedule of those meetings will be available at the Elections Committee office and will be published in the Local newspaper and on the Local's web site as dates are established.

2. The names of candidates nominated at these meetings must be submitted to the Recording Secretary of Local 100 no later than 6:00 PM on the third day following the nominating meeting.

3. A member need be nominated at only one nomination meeting (AM or PM). A member nominated for Section Office must be present at the nomination meeting and submit a Nomination Acceptance Form, or the member nominating him/her must submit a written acceptance signed by the absent member by the close of the nomination meetings.

4. A member may accept the nomination for only one position. The acceptance form shall include the nominee's address, telephone number, e-mail address and social security number.

5. The member making the nomination must be from the section or depot or location whose officers are being nominated.

## ELIGIBLITY

1. To be nominated for Section Office, a member must have been in continuous good standing for twelve months prior to the month of nomination.

2. To be nominated for Section Office a member must have attended at least five (5) of the regular meetings of his/her Division or Section held during the twelve (12) month period immediately preceding the month of nomination. Meeting attendance may be excused only if the nominee has previously acted in accordance with Article XV, Sec. 7 of the TWU Constitution.

3. In accordance with Article XI Section (d) of the Local 100 Bylaws, "a member who has an application pending for a supervisory non-[Local 100] bargaining unit position, or who is serving in such capacity for any employer which has a collective bargaining agreement with Local 100, even on an acting basis, shall not be eligible to run for or hold office." Since DCAS and MABSTOA do not permit the withdrawal of an application until after an applicant is called for a position, members will not be permitted to "become eligible" by "withdrawing" his or her name from a DCAS or MABSTOA list. The Elections Committee shall make all rulings on issues related to the application of the good standing, meeting attendance, and supervisory application requirements. This rule shall not be applied to members who applied for a supervisory position prior to the amendment of the Bylaws July 11, 2008.

## SLATE NOMINATIONS—SECTION OFFICES

Any group of candidates may, on written notice to the Elections Committee, on a form provided by the Elections Committee, constitute a slate, provided that in each case the Slate contains nominees for Chair, at least one Vice Chairs, and Recording Secretary. A slate may not contain more than one candidate for Chair or Recording Secretary, or more than the number of Vice Chair positions in that Section. The completed form submitted to the Elections Committee must: (1) be signed by each candidate on the slate (no one may sign for another member), (2) show the office for which he/she is a candidate, and (3) include his/her printed name exactly as it is to appear on the petition and ballot, and his/her contact information including the mailing address, social security number, telephone number, and e-mail address. A section slate may utilize the name of a slate which ran in the union-wide election. The ballot shall give the voter the opportunity to cast one slate vote for all Section officers.

## ELIGIBILITY RULINGS

Rulings on eligibility can be made by the Elections Committee, either on its own initiative or upon the objection of a member. Any objections to eligibility must be made within two business days of the nomination. Appeals from the Elections Committee may be made only to the Executive Board. The Neutral Monitor shall have no jurisdiction over Section elections.

## MAILINGS

Mailings and e-mailings may be made to members in accordance with the Supplemental Rules set forth in Section IV above. All mailings/e-mailings will be administered by the Elections Committee at the candidate's expense.

## ELECTION

1. The election of Section Officers will take place in December 2012 and January-February 2013, on dates to be determined by the Elections Committee, which will be published at least 15 days in advance of the election.

2. The manner of voting (whether in person or mail ballot) shall proceed in accordance with the past practices of the section except for Stations Sections 2, 46, 106 and 145, which shall have a mail ballot election, or if the Elections Committee determines that a mail ballot provides a substantially greater opportunity to vote.

3. The Elections Committee shall conduct the balloting, either in person or by mail, and shall notify all candidates of the date, time and location of the count.

4. Members working in MABSTOA I and II bus depots who are employed by NYC Transit, and members who are working in NYC Transit bus depots who are employed by MABSTOA may vote for section officers in the depot where they are employed, but may not run for office in that depot.

## VI.
## LOCAL 100 ELECTIONS COMMITTEE

| | |
|---|---|
| David Francis, Chairman | 212.873.6000, ext. 2089 |
| .: Aquilino Castro .:, Member | 212.873.6000 ext. 2061 |
| Kevin McCawley, Member | 212.873.6000 ext. 2059 |
| Arthur Z. Schwartz, Counsel | e-mail: aschwartz@afjlaw.com |
| Election Committee General | 212.873.6000, ext. 2090 |
| Elections Committee e-mail: | elections2012@twulocal100.org |
| Election Committee Fax | 646.998.7150 |
| Neutral Monitor: Barbara Deinhardt | phone: 917-763-0906 |
| | fax: 718-855-2933 |
| | email: neutralmonitor@gmail.com |
| Election materials are available at: | www.twulocal100.org/elections2012 |

---

**RECEIPT OF THESE RULES DOES NOT MEAN YOU ARE A MEMBER IN GOOD STANDING, ELIGIBLE TO VOTE OR RUN FOR OFFICE.**

The law requires that all "members" receive the Notice of Nominations and Election. If you do not know if the union considers you to be a Good Standing member, eligible to nominate, or run for office, or vote, please check the mailing label on this publication. That label says either, "Good Standing" or "Ineligible." If you want to bring yourself into Good Standing, please call the Dues Department at 212-873-6000 ext. 2083.

**ONLY MEMBERS IN GOOD STANDING MAY SIGN NOMINATING PETITIONS, NOMINATE DIVISION OFFICERS, RUN FOR OFFICE OR VOTE.**

---

Supplemental Rule No. 1. Advance Notice of Vacation Requests
Issued September 23, 2012

In order to ensure compliance with Election Rule IV(5)(C), any person on the Union staff must make a written request and anyone on TA/MABSTOA/MTA Bus release must give written notice to Financial Secretary Earl Philips by email in advance of taking any vacation time or other personal time for campaigning. If union staff making the request has sufficient vacation accruals, the request will be deemed granted. This requirement does not apply to campaigning that is incidental to regular Local Union business or during paid lunch hours or breaks or similar paid time off.